**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE HERITAGE FOUNDATION; AMERICAN CONSERVATIVE VALUES ETF,<br><br>    *Plaintiffs*,<br>    v.<br><br>AIRBNB, INC.; RONALD A. KLAIN; ELINOR MERTZ; ANGELA YANG; BRIAN CHESKY; ANGELA AHRENDTS; AMRITA AHUJA; NATHAN BLECHARCZYK; KENNETH CHENAULT; JOE GEBBIA; JEFFREY JORDAN; ALFRED LIN; JAMES MANYIKA,<br><br>    *Defendants*. | No. _____ |

## COMPLAINT

The Heritage Foundation and American Conservative Values ETF (together, "Plaintiffs"), by their undersigned counsel, allege as follows:

## NATURE OF CASE

1.    In advance of Defendant Airbnb, Inc.'s ("Airbnb"), June 2025 annual shareholder meeting, each Plaintiff independently submitted a shareholder proposal (the "Proposals") to Airbnb in accordance with its submission requirements and the rules of the Securities and Exchange Commission ("SEC").

2.    Plaintiff The Heritage Foundation is a public policy institution and expressive association. Its mission is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense. It owns approximately 360 shares (or approximately $46,000) of Airbnb common stock (ticker ABNB). As a shareholder, on December 17, 2024, the Heritage Foundation submitted

its proposal (the "Heritage Proposal") asking for the Airbnb Board to approve an analysis of how Airbnb oversees the legal and reputational risks connected with politicized divestments. *See* Ex. A at 4.

3.      Plaintiff American Conservative Values ETF ("ACVF") is an exchange-traded fund designed to reflect conservative political values in its investment strategy. It owns 3,479 shares (or approximately $447,643) of Airbnb common stock. As a shareholder, on December 18, 2024, ACVF submitted its proposal (the "ACVF Proposal") asking for the Airbnb Board to approve a report about how Airbnb oversees risks related to denying or restrict service to users or customers based on their religious or political status or views, and how such discrimination impacts users, customers, and other individuals' exercise of their constitutionally protected civil rights. *See* Ex. B at 3–4.

4.      Plaintiffs both received FedEx proof of delivery of their proposals at Airbnb's San Francisco headquarters on different dates in December 2024. Both receipts listed the name of Airbnb's mailroom manager as the recipient and included an image of a signature.

5.      Under SEC regulations, Airbnb was required to include the Proposals in its proxy materials for its 2025 annual shareholder meeting (the "2025 Proxy Materials") *unless* Airbnb first complied with SEC requirements for excluding shareholder proposals, including (1) alerting Plaintiffs that Airbnb intended to exclude the Proposals and (2) providing a basis for exclusion to the SEC, at which point Plaintiffs would have a right to respond. *See* 17 C.F.R. §§ 240.14a-8(f), (j).

6.      Airbnb followed none of those requirements, and thus was required to include the Proposals in the 2025 Proxy Materials. When it issued its 2025 Proxy Materials in late April 2025,

2

however, Plaintiffs' Proposals were nowhere to be found. Airbnb had excluded them despite not following any of the legal prerequisites for doing so.

7.    But not all shareholder proposals had been excluded. A proposal submitted by a liberal-leaning state pension fund *was* included in the 2025 Proxy Materials. There was nothing wrong with Airbnb's mailroom, at least when it came to processing proposals submitted by liberal shareholders.

8.    In subsequent discussions with Plaintiffs' representatives on May 8 and May 13, 2025, Airbnb claimed that it never received the Proposals and that FedEx must have faked the signature of Airbnb's mailroom manager and both proofs of delivery, even though they listed Airbnb's mailroom manager's name as the recipient, and even though the Proposals arrived on different dates in December 2024.

9.    Airbnb refused to include the Proposals in a supplement for the 2025 Proxy Materials and also refused to agree not to exclude them from its *2026* Proxy Materials.

10.    As a result, the Proposals have been wrongfully excluded from the 2025 Proxy Materials and will not receive a vote at the 2025 shareholder meeting on June 4, 2025.

11.    Plaintiffs bring this action to vindicate their rights as shareholders of Airbnb. Plaintiffs seek injunctive, declaratory, and monetary relief in connection with the wrongful exclusion of the Proposals from the 2025 Proxy Materials. There is also a likelihood of future shareholder proposals likewise being improperly excluded and—given the extraordinarily short timeline between wrongful exclusion and the shareholder meeting itself—Airbnb's actions would otherwise evade full and final judicial resolution, meaning declaratory and potentially injunctive relief are needed to avoid likely future injury.

## JURISDICTION AND VENUE

12.     The claim asserted herein arises under and pursuant to 15 U.S.C. § 78n and Rule 14a-8, 17 C.F.R. § 240.14a-8, promulgated thereunder; as well as under Delaware state law for a breach of fiduciary duties.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa.

14.     This Court has personal jurisdiction over Airbnb as a publicly listed corporation incorporated and existing under the laws of Delaware.

15.     Venue is proper in this District pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Airbnb is incorporated in this District.

16.     In connection with the acts alleged in this complaint, Airbnb, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

## THE PARTIES

17.     The Heritage Foundation is a non-profit public policy institution and expressive association headquartered in Washington, D.C.

18.     ACVF is an exchange-traded fund designed to respect conservative political values in its investment strategy. ACVF is based on the conviction that companies who take divisive stances on contentious political issues risk negatively impacting their shareholder returns and alienating customers, employees, and others with conservative political ideals, beliefs and values.

19.     ACVF is owned and operated by Ridgeline Research, LLC, a registered investment adviser based in Maryland.

20.     Airbnb is a publicly listed Delaware corporation that maintains its corporate headquarters in San Francisco, California. Airbnb is an online marketplace that facilitates peer-to-peer home sharing.

21.     In 2018 Florida and Texas blacklisted Airbnb for supporting the Boycott, Divestment & Sanctions ("BDS") movement by banning listings in Israeli settlements in the West Bank. Justin Miller, *Airbnb is the Latest Target of Texas' Anti-BDS Crusade*, Tex. Observer (Mar. 6, 2019), https://perma.cc/67RV-WQWA. Airbnb reversed its position in 2019. Lawrence Miller, *Florida to Remove Airbnb from 'Banned Companies' List After Israel Reversal*, Tampa Bay Times (May 29, 2019), https://archive.ph/fsj9b.

22.     Airbnb has adopted an aggressive "nondiscrimination policy" that requires homeowners to "respect[]" and use whatever "self-identified gender(s)" and "pronoun[s]" a guest announces, as well as barring "deadnaming, misgendering, microaggressions, and all other forms of hateful speech." Airbnb, *Nondiscrimination Policy*, Airbnb Help Ctr. (May 13, 2025), https://perma.cc/K5TG-U45R. Homeowners are also barred from "impos[ing] differential treatment because a host disagrees with the expressed gender identity of a guest or because the guest identifies outside of the gender binary." *Id.*

23.     Airbnb states it has and will "investigat[e] and remov[e]" accounts for anyone "associated with known hate groups," an amorphous term Airbnb declines to define. Airbnb, *An Update on Our Work to Uphold Our Community Standards*, Airbnb Newsroom (Mar. 18, 2021), https://perma.cc/VU4V-7JTJ. But Airbnb's definition of "hate group" is apparently so expansive that it has led to the cancelation of accounts used by *parents* of conservative activists whom Airbnb dislikes. *See, e.g.*, Yael Halon, *Conservative Activist Rejects Airbnb's Apology After Banning Her*

*Parents: Something More 'Nefarious Going On'*, Fox News (Feb. 9, 2023), https://perma.cc/729L-UEVX.

24.      Defendant Ronald A. Klain is Chief Legal Officer of Airbnb. He previously served as White House Chief of Staff from 2021 to 2023. He owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He is responsible for Airbnb's compliance with applicable legal regimes, including SEC regulations.

25.      Defendant Elinor Mertz is, and at all relevant times was, Chief Financial Officer of Airbnb. As an officer of Airbnb, she owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs.

26.      Defendant Angela Yang is, and at all relevant times was, Director of Investor Relations of Airbnb. She owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. Additionally, she bears the responsibility to manage investor inquiries, including the shareholder proposal process.

27.      Defendant Brian Chesky is, and at all relevant times was, on the Board of Directors of Airbnb. He is on the Stakeholder Committee. He is also CEO of Airbnb. As a director and officer of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved and signed the 2025 Proxy Materials.

28.      Defendant Angela Ahrendts is, and at all relevant times was, on the Board of Directors of Airbnb. She is on the Stakeholder Committee. As a director of Airbnb, she owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. She approved the 2025 Proxy Materials.

29.     Defendant Amrita Ahuja is, and at all relevant times was, on the Board of Directors of Airbnb. As a director of Airbnb, she owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. She approved the 2025 Proxy Materials.

30.     Defendant Nathan Blecharczyk is, and at all relevant times was, on the Board of Directors of Airbnb. He is on the Stakeholder Committee. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

31.     Defendant Kenneth Chenault is, and at all relevant times was, on the Board of Directors of Airbnb. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

32.     Defendant Joe Gebbia is, and at all relevant times was, on the Board of Directors of Airbnb. He is on the Stakeholder Committee. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

33.     Defendant Jeffrey Jordan is, and at all relevant times was, on the Board of Directors of Airbnb. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

34.     Defendant Alfred Lin is, and at all relevant times was, on the Board of Directors of Airbnb. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

35.     Defendant James Manyika is, and at all relevant times was, on the Board of Directors of Airbnb. He is Chair of the Stakeholder Committee. As a director of Airbnb, he owes fiduciary duties to Airbnb and its shareholders, including Plaintiffs. He approved the 2025 Proxy Materials.

## BACKGROUND

**A.    Regulatory Requirements Governing Shareholder Proposals**

36.    In large, publicly held corporations such as Airbnb, most shareholders rarely attend the company's annual meeting in-person. For the company to obtain a quorum of shareholder votes sufficient to take actions necessary for it to conduct its business, the company must utilize proxies, by which a shareholder authorizes another person to vote his or her shares at the annual meeting.

37.    To obtain votes by proxy, the company sends out proxy materials, including a proxy solicitation and a voting card that contains the company's proposals for shareholder vote, well in advance of the annual meeting.

38.    Section 14(a) of the 1934 Securities Exchange Act renders unlawful the solicitation of proxies in violation of the SEC's rules and regulations, which have been codified at 17 C.F.R. § 240.14a-1, *et seq.*

39.    Chief among those rules and regulations is the SEC's Rule 14a-8. The SEC "promulgated Rule 14a–8 to catalyze what many hoped would be a functional corporate democracy. The rule mandates subsidized shareholder access to a company's proxy materials, requiring reporting companies to print and mail with management's proxy statement, and to place on management's proxy ballot, any 'proper' proposal submitted by a qualifying shareholder. The idea was to provide shareholders a way to bring before their fellow stockholders matters of shareholder concern that are proper subjects for stockholders' action under the laws of the state under which the Company was organized and to have proxies with respect to such proposals solicited at little or no expense to the security holder." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 335 (3d Cir. 2015) (cleaned up).

40.    As relevant here, Rule 14a-8 provides the procedures for submitting shareholder proposals, prescribes when a company must include a shareholder's proposal in the company's

8

proxy statement, and lists the circumstances under which a shareholder proposal may be excluded by the company.

41.     For example, Rule 14a-8(b)(1) requires that a proponent have held certain amounts of shares for certain periods of time. 17 C.F.R. § 240.14a-8(b)(1). Rule 14a-8(b)(2) requires the proponent to prove its eligibility, typically by submitting a statement from the broker or bank holding the shares, *id.* § 240.14a-8(b)(2)(i), though shareholders may also "submit to the company a written statement … verifying that, at the time you submitted your proposal, you continuously held [the requisite amount of stock for the appropriate amount of time]," *id.* § 240.14a-8(b)(2)(ii)(A).Rule 14a-8(d) limits proposals to 500 words, and Rule 14a-8(e) requires proposals to be submitted to the company no later than 120 days before the date the company's proxy statement will be released. *Id.* §§ 240.14a-8(d), (e)(2). And Rule 14a-8(i) lists thirteen bases on which a company can seek exclusion even of a properly submitted proposal. *Id.* § 240.14a-8(i).

42.     As relevant here, Rules 14a-8(f) and (j) lay out the "procedures" the company "must … follow if it intends to exclude [a] proposal." *Id.* § 240.14a-8(j).

43.     *First*, the company "must notify the shareholder in writing of the problem with the proposal within 14 days of receiving it and inform the shareholder that it has 14 days to respond." *Trinity Wall St.*, 792 F.3d at 336 (citing 17 C.F.R. § 240.14a–8(f)(1)).

44.     *Second*, "[i]f the company finds the shareholder's response unpersuasive and still wants to exclude the proposal, it then must file with the [SEC's] staff the reasons why it believes the proposal is excludable no later than 80 days before the company files its proxy materials with the SEC." *Id.* (citing 17 C.F.R. § 240.14a–8(j)(1)).

45.     *Third*, the "company must simultaneously provide [the proponent] with a copy of its submission," although the SEC "may permit the company to make its submission later than 80

days before the company files its definitive proxy statement and form of proxy, if the company demonstrates good cause for missing the deadline." 17 C.F.R. § 240.14a–8(j).

46.     *Fourth*, the "company must file six paper copies of the following: (i) The proposal; (ii) An explanation of why the company believes that it may exclude the proposal, which should, if possible, refer to the most recent applicable authority, such as prior Division letters issued under the rule; and (iii) A supporting opinion of counsel when such reasons are based on matters of state or foreign law." *Id.* § 240.14a–8(j)(2).

47.     If the company satisfies these requirements, the proponent "[m]ay … submit [its] own statement to the Commission responding to the company's arguments." *Id.* § 240.14a-8(k).

48.     After this procedure, the SEC Staff often issues a letter either agreeing with the company that there are grounds to support the exclusion of the proposal, or saying insufficient grounds for exclusion have been presented. *Trinity Wall St.*, 792 F.3d at 336.

49.     Working in tandem with Rule 14a-8 is Rule 14a-9, which bars "false or misleading" material statements and omissions in a proxy. 17 C.F.R. §§ 240.14a-9(a). "[T]he omission of a proposal from proxy materials that was not properly excluded under Rule 14a-8[] makes the proxy inherently misleading under Rule 14a–9." *Grimes v. Ohio Edison Co.*, 992 F.2d 455, 458 (2d Cir. 1993).

50.     In addition, under Delaware law, directors and officers of Delaware corporations are subject to two fundamental fiduciary duties: the duty of care and the duty of loyalty.  The duty of care generally requires directors and officers to be active, diligent, and fully informed in making business decisions; the duty of loyalty generally obligates directors and officers to act in good faith and in the best interests of the corporation and all of its stockholders, and not in their own self-interest.  The duty of disclosure generally requires that when directors and officers ask stockholders

to take an action – such as voting by proxy at an annual meeting – the directors and officers must fully disclose all material facts within their control that would have a significant impact on the action or decision. *See Malone v. Brincat,* 722 A.2d 5 (Del. 1998). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (quoting *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)). From these duties flows the duty of disclosure. The duty of disclosure requires that when directors ask stockholders to take an action – such as voting by proxy in an annual meeting – they must fully disclose all material information.

**B.    Airbnb's Proxy Process**

51.    Airbnb's 2024 Proxy Materials stated that "[m]atters for inclusion in the proxy materials for the 2025 annual meeting of stockholders, other than nominations of directors, must be received at 888 Brannan Street, San Francisco, California 94103 on or before December 20, 2024. All proposals must comply with Rule 14a-8 under the Securities Exchange Act of 1934, as amended (the 'Exchange Act')." Ex. C at 6 [2024 Proxy Materials].

52.    The same rule applies for proposals seeking inclusion in Airbnb's 2026 Proxy Materials, which "must be received at 888 Brannan Street, San Francisco, California 94103 on or before December 26, 2025." Ex. D at 6. [2025 Proxy Materials].

**C.    The Heritage Proposal**

53.    The Heritage Foundation is, and at all relevant times has been, the beneficial owner of at least $40,000 of Airbnb securities.

54.    On December 18, 2024, in compliance with Airbnb's proxy-submission rules and Rule 14a-8, The Heritage Foundation, through Bowyer Research, submitted the Heritage Proposal

via FedEx Priority Overnight with Direct Signature Required to Airbnb's San Francisco headquarters. Ex. A.

55.    The Proposal included a cover letter confirming and explaining all required information for The Heritage Foundation to submit the Heritage Proposal. Ex. A at 1.

56.    The Heritage Proposal stated: "Shareholders request that the Board of Directors of Airbnb, Inc. report to shareholders annually, at reasonable expense and excluding confidential information, an analysis of how Airbnb oversees the legal and reputational risks connected with politicized divestments." Ex. A at 2.

57.    The full recitation in support of the Heritage Proposal stated:

Whereas: Airbnb is one of the largest travel brokers in the world, with more than 7 million listings in more than 200 countries. Because of its prominent role in the global travel market, Airbnb has both an interest in, and responsibility to, address growing concerns over politicization of its services and resist current activist demands for the same.

One arena in which such politicization has become rampant is the issue of politically-motivated divestments. After the horrific and unconscionable events of October 7, many businesses, including both defense contractors like Lockheed Martin and travel companies like Tripadvisor, have come under fire for doing business with actors involved in the conflict, with activists alleging that their continuance of normal business practices in the region renders companies complicit in human rights violations.

This pressure has also spread to Airbnb — a day after the initial attacks of October 7, the Boycott, Divestment, & Sanctions movement released a call for "institutional pressure campaigns" against corporate actors willing to do business in regions affected by the conflict. Among the list of targeted companies? Google, Amazon … and Airbnb.

Airbnb itself is no stranger to politicized divestments. In 2018, the company announced its decision to remove 200 "Israeli settlements in the occupied West Bank," citing strong views of "historic and intense disputes between Israelis and Palestinians in the West Bank" from those who "believe companies should not profit on lands where people have been displaced." In Airbnb's defense, it reversed its decision regarding West Bank listings in 2019, but the damage had been done — the door for politicized divestments had been opened.

Now, Airbnb is once again facing pressure over its decision to maintain listings in areas of the world rocked by conflict. Yet this time, the pressure is not internal, but external — fueled by activists who have no investment in Airbnb's success, and who have explicitly maligned Airbnb, which provides jobs to thousands and whose success has created unimaginable human flourishing worldwide, as "complicit in … crimes against humanity."

Airbnb has an opportunity to resist this profoundly anti-business activism and take a meaningful stand on behalf of shareholders and brand performance alike — politicized divestments, regardless of which side or activist cause they favor, hurt brand performance, impact shareholder return, and politicize Airbnb's corporate policies. Resisting such politicization is key to creating a world where Airbnb's mission of "belong anywhere" truly means everywhere, not just the places where corporate activists would like the Company to be.

Ex. A at 2 (citations omitted).

58.     The Heritage Foundation included proof of its ownership, as verified and signed by a Senior Vice President from Truist Bank. Ex. A at 3.

59.     One day later, on December 19, 2024, FedEx reported "proof-of-delivery" of the Heritage Proposal, showing it had been "[s]igned for by" "A. Johnson" at Airbnb's San Francisco headquarters at 11:21 A.M. Ex. E. The proof of delivery also shows an image of a signature. *Id.*

**D.     The ACVF Proposal**

60.     ACVF is, and at all relevant times has been, the beneficial owner of at least $25,000 of Airbnb securities.

61.     On December 18, 2024, ACVF, through the Alliance Defending Freedom, emailed Airbnb's Investors Relations address (ir@airbnb.com) asking, "To what email address should we send shareholder proposals for filing?" Ex. F. No response was ever received.

62.     To ensure proper delivery, on December 18, 2024, in compliance with Airbnb's proxy-submission rules and Rule 14a-8, ACVF, through Ridgeline Research, submitted the ACVF Proposal via FedEx "2Day" service to Airbnb's San Francisco headquarters. Ex. B.

63.     The Proposal included a cover letter confirming and addressing all required information for ACVF to submit its Proposal. Ex. B at 1.

64.     The ACVF Proposal stated: "Shareholders request that the Board of Directors of Airbnb conduct an evaluation and issue a report within the next year, at reasonable cost and excluding proprietary information and disclosure of anything that would constitute an admission of pending litigation, evaluating how it oversees risks related to denying or restrict[ing] service to users or customers based on their religious or political status or views under 'hate speech,' 'misinformation,' and related policies, other terms of use or content management policies, or any other policies or practices, and how such discrimination impacts users, customers, and other individuals' exercise of their constitutionally protected civil rights." Ex. B at 4.

65.     The full recitation in support of the ACVF Proposal stated:

Digital service providers (DSPs) control access to critical services and platforms that drive innovation in the American economy and facilitate expression and the open exchange of information across the globe. These companies have unprecedented power to censor speech. And they are under increasing pressure to remove unpopular religious and political views from the marketplace.

Respecting fundamental freedoms, like free speech and religious liberty, drives healthy discourse and tolerance for diverse views. Airbnb can and should promote these freedoms to best serve its diverse users and promote a healthy market and marketplace of ideas. Economic growth also requires innovation, and that requires the freedom to challenge the status quo. If DSPs build their own social credit system, they are going to lock out Americans from some of the best tools for innovation and growth.

But recent events and DSPs' own policies suggest that users' and customers' freedom of expression and religion are at risk. In addition to concerning revelations of collusion with government at companies like Meta and Twitter to censor constitutionally protected speech, the 2024 edition of the Viewpoint Diversity Business Index found that every one of the largest DSPs, including Airbnb, have policies that permit them to deny or restrict service based on vague and subjective terms like "misinformation," "hate speech," "intolerance," or "reputational risk." Airbnb, for example, prohibits users who are "leaders of hate groups" or engage in speech that Airbnb considers "hateful." And it has taken significant negative press for enforcing the policy against figures like Laura Southern and Michelle Malkin.

These kinds of terms encourage tech companies—and activists and governments who may pressure them—to deny or restrict service for arbitrary or discriminatory reasons. They also let the companies avoid accountability by hiding censorship behind vague and shifting standards.

When DSPs engage in this kind of discrimination, they expose themselves to heightened legal liability and hinder the ability of Americans to access the marketplace. This undermines the fundamental freedoms of our country and is an affront to the public trust.

Airbnb also maintains a non-discrimination policy. The shareholders need to know that Airbnb is adhering to its own standards by serving diverse customers without regard to their beliefs or other factors above.

Ex. B at 3 (citations omitted).

66. ACVF stated that a "Proof of Ownership letter is forthcoming and will be delivered once the company confirms receipt of this proposal and its submission date." Ex. B at 1. Under Rule 14a-8(b), this is permissible. *See* 17 C.F.R. § 240.14a-8(b)(2)(ii)(A). Indeed, it is often prudent to submit this proof later, as the SEC requires proof of ownership through the date of submission, which companies sometimes argue means through 11:59pm on the date of submission. *See SEC No-Action Decision for Wells Fargo* (ACVF) at 55 (Mar. 8, 2024).

67. Two days later, on December 20, 2024, FedEx reported "proof-of-delivery" of the ACVF Proposal, showing it had been "[s]igned for by" "A. Johnson" at Airbnb's San Francisco headquarters at 11:46 A.M. Ex. G. The proof of delivery also shows a signature. *Id.*

**E.    Airbnb's Exclusion of the Proposals**

68. Even though Plaintiffs satisfied Airbnb's proxy-submission rules, Airbnb did not trigger Rule 14a-8(f)'s and (j)'s exclusion procedures for either the Heritage Proposal or the ACVF Proposal.

69. Airbnb did not notify Plaintiffs within 14 days of an intent to exclude, pursuant to Rule 14a-8(f), nor did Airbnb follow Rule 14a-8(j)'s process for alerting the SEC that Airbnb

sought to exclude the Proposals. Under Rule 14a-8, Airbnb was therefore required to include the Proposals in the 2025 Proxy Materials.

70.     On or about April 25, 2025, Airbnb released, filed, and transmitted to shareholders its 2025 Proxy Materials, which did not include either the Heritage Proposal or the ACVF Proposal.

71.     The 2025 Proxy materials did, however, include a proposal submitted by the Connecticut Retirement Plans and Trust Funds, *see* Ex. D at 52, which is a liberal-leaning fund that openly supports considerations like Environmental, Social, and Governance ("ESG") factors, *see, e.g.*, Conn. State Treasurer, *Investment Policy Statement for the Connecticut Retirement Plans and Trust Funds*, Inv. Advisory Couns., at 105 (Sept. 14, 2022), https://perma.cc/PDK9-UVER.

72.     In discussions with representatives for Plaintiffs on May 8 and 13, 2025, Airbnb acknowledged that the proof of receipt for both Proposals showed the name of the mailroom manager for Airbnb ("A. Johnson"), but Airbnb claimed that both of those delivery receipts— which show a signature—must have been forged by FedEx and that Airbnb had never received the Proposals, even though it clearly had no difficulty receiving and processing the proposal from the liberal-leaning Connecticut Retirement Plans and Trust Funds.

73.     Despite claiming the failure to process Plaintiffs' proposals was all an honest mistake, and despite never asserting that the Proposals were excludable under Rule 14a-8 or Delaware law, Airbnb nonetheless (1) refused to include Plaintiffs' Proposals in a supplement to the 2025 Proxy Materials, (2) refused to say it would not seek to exclude the Proposals from its 2026 Proxy Materials, and (3) refused to agree to let Plaintiffs submit multiple shareholder proposals in 2026. *See* 17 C.F.R. § 240.14a-8(c) (normally allowing only one proposal per shareholder per annual meeting).

16

74. The exclusion of the Proposals from the 2025 Proxy Materials was wrongful, and the upcoming annual shareholders meeting will proceed without Plaintiffs' Proposals receiving a vote—all because Airbnb excluded the Proposals despite SEC regulations and despite written proof that both Proposals were properly delivered to Airbnb. Plaintiffs and other shareholders of Airbnb thus were and will be deprived of their rights to submit proposals and to vote on them.

75. Through this action, Plaintiffs seek to vindicate these rights.

76. Upon information and belief, Airbnb will exclude the Proposals and any other proposals submitted by Plaintiffs from the 2026 Proxy Materials, as well. The bases for this understanding include that (1) Plaintiff ACVF contacted Airbnb in December 2024 for instructions on submitting proposals but never heard back, indicating Airbnb has long had no interest in respecting ACVF's shareholder rights; (2) Plaintiffs have written proof of delivery of their Proposals on *different dates*, indicating this was no one-time delivery oddity; (3) despite this documentation, Airbnb blames FedEx for faking the delivery materials; (4) Airbnb nonetheless included a proposal from a liberal-leaning shareholder, confirming there is nothing wrong with the Airbnb mailroom or its delivery procedures (or that it provides alternative delivery methods for its preferred proposals); and (5) Airbnb refused to make any effort to include the Proposals in the 2025 Proxy Materials via a supplement, and even refused to state it would not exclude the Proposals again in the 2026 Proxy Materials.

77. These facts, taken together, indicate that Airbnb is playing politics with its shareholders' proposals, favoring those submitted by liberal-leaning shareholders while mysteriously "losing" those submitted by conservative shareholders and then refusing even to undertake minimal good-faith efforts to rectify the situation. All signs point to Airbnb targeting Plaintiffs, who will accordingly face increased risk of exclusion again in 2026.

## COUNT I – 2025 VIOLATION OF SECTION 14(a) AND RULE 14A-8

78.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

79.    "Section 14(a) makes it unlawful to solicit a proxy 'in contravention of such rules and regulations as the [SEC] may prescribe as necessary and appropriate in the public interest or for the protection of investors.'" *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quoting 15 U.S.C. § 78n(a)). That includes a private right of action to enforce those rights. *See Trinity Wall St.,* 792 F.3d at 335; *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 421 (D.C. Cir. 1992) (R.B. Ginsburg, J.) (private right of action to enforce Rule 14a-8); *Bebchuk v. CA, Inc.*, 902 A.2d 737, 742 n.28 (Del. Ch. 2006) (recognizing "private right of action under Rule 14a-8 to challenge the exclusion").

80.    Here, Airbnb solicited a proxy in contravention of Rule 14a-8, and thus Plaintiffs have a right of action against Airbnb to enforce Section 14(a) of the Exchange Act and Rule 14a-8 promulgated pursuant thereto. *See also, e.g.*, *Shaev v. Saper*, 320 F.3d 373, 378–79 (3d Cir. 2003).

81.    The Heritage Proposal satisfied all requirements of Rule 14a-8, and the ACVF Proposal satisfied nearly every requirement of Rule 14a-8, but waited in good faith to confirm ownership until proof of receipt had been provided, as explained above. Indeed, had Airbnb followed *any* of the required steps to exclude a proposal under Rule 14a-8, or even responded to its own investor relations email address, ACVF would have had ample notice and opportunity to cure any real or alleged problems with its proposal. The Proposals were delivered to Airbnb, with FedEx proof of delivery showing receipt by Airbnb's mailroom manager and a signature.

82.    On or about April 25, 2025, Airbnb released its 2025 Proxy Materials but did not include either of the Proposals. This was the first time Plaintiffs received any notice that their

proposals might be excluded. Airbnb never initiated the Rule 14a-8 process for either Proposal. Airbnb did not inform Plaintiffs of any alleged defects within 14 days, as required by Rule 14a-8(f), nor did Airbnb satisfy any of Rule 14a-8(j)'s requirements for excluding a proposal. 17 C.F.R. §§ 240.14a-8(f), (j).

83.    Airbnb's decision to omit the Proposals from the 2025 Proxy Materials violated Section 14(a) of the Exchange Act and Rule 14a-8.

84.    Injunctive and declaratory relief are warranted. Further, there is a "private right of action under § 14(a) … to sue for damages." *Tracinda*, 502 F.3d at 228. Plaintiffs are entitled to damages in an amount to be determined for Airbnb's wrongful exclusion of their Proposals.

## COUNT II – REASONABLY ANTICIPATED 2026 VIOLATION OF SECTION 14(a) AND RULE 14A-8

85.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

86.    "Section 14(a) makes it unlawful to solicit a proxy 'in contravention of such rules and regulations as the [SEC] may prescribe as necessary and appropriate in the public interest or for the protection of investors.'" *Tracinda*, 502 F.3d at 228 (quoting 15 U.S.C. § 78n(a)); *see Trinity Wall St.*, 792 F.3d at 335. Here, Airbnb solicited a proxy in contravention of Rule 14a-8, and thus Plaintiffs have a right of action against Airbnb to enforce Section 14(a) of the Exchange Act and Rule 14a-8 promulgated pursuant thereto. *See also, e.g.*, *Shaev*, 320 F.3d at 378–79.

87.    There is a substantial likelihood that Airbnb will again violate Section 14(a) and Rule 14a-8 in connection with the *2026* Proxy Materials, unless Plaintiffs' legal rights are adjudicated in this action. Plaintiffs will not know for certain whether their Proposals have been wrongfully excluded until Airbnb actually releases its 2026 Proxy Materials in Spring 2026, just

weeks before the 2026 Annual Meting itself, meaning the time for Plaintiffs to sue and obtain a judicial ruling is during a vanishingly narrow window.

88.     "[T]he short duration of the proxy season makes full litigation on the merits of a shareholder proposal before an annual meeting close to impossible (at least for the undersigned Judge, given this Court's current docket). As such, this case falls in the special category of disputes that are 'capable of repetition, yet evading review.'" *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 625 (D. Del. 2014). "[T]he window for [the company] to evaluate shareholder proposals is so short," and "the allowable steps relating to [the SEC's Rule 14a-8 process] understandably take several months," meaning that "even when everyone acts in a timely manner the case only reaches District Court with just weeks remaining before proxy materials must be finalized and printed." *Id.* at 626.

89.     That brief period will prevent considered and definitive and final, rather than merely preliminary, judicial resolution of the dispute between Plaintiffs and Airbnb regarding the 2026 Proxy Materials and for each and every future year Plaintiffs seek inclusion of their Proposals or other proposals in Airbnb's proxy materials, unless the Court resolves this action on the merits.

90.     The dispute is also "*capable* of repetition." *Id.* at 628 (emphasis in original). As explained above, Airbnb ignored ACVF's attempts to obtain information about submitting proposals. Airbnb then claimed that two conservative-leaning Proposals delivered on different dates were *both* the subject of forged FedEx delivery documentation, yet a proposal from a liberal-leaning shareholder was properly received and included in the 2025 Proxy Materials. Airbnb subsequently refused to include the Proposals in a supplement or even agree not to exclude them in the 2026 Proxy Materials.

91.     These facts indicate that Airbnb is playing politics with its shareholders' proposals, and thus this dispute is certainly "*capable* of repetition." *Id.*

92.     Further, if Airbnb is not held to account here, it will have found a convenient loophole around the Rule 14a-8 process: ignore any disfavored proposals and fail to notify the shareholders until it is too late to include them. The Rule 14a-8 process is not a suggestion, but Airbnb seems to think it is free to ignore these regulations. The Court should grant declaratory and, if necessary, injunctive relief to ensure Airbnb complies with Rule 14a-8 in 2026.

### COUNT III – 2025 VIOLATION OF SECTION 14(a) AND RULE 14A-9

93.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

94.     Rule 14a-9, which was likewise promulgated by the SEC under the authority of Section 14(a), bars "false or misleading" material statements and omissions in a proxy. 17 C.F.R. §§ 240.14a-9(a). Rule 14a-9 "require[s] companies to provide shareholders with the opportunity to submit proposals to management for inclusion in the corporation's proxy materials." *Trinity Wall St.*, 792 F.3d at 335 (cleaned up).

95.     "[T]he omission of a proposal from proxy materials that was not properly excluded under Rule 14a-8[] makes the proxy inherently misleading under Rule 14a–9." *Grimes*, 992 F.2d at 458.

96.     Because the Proposals were wrongfully excluded under Rule 14a-8, the 2025 Proxy Materials are inherently misleading under Rule 14a-9. *See also Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710 (3d Cir. 2020) ("[O]missions in a proxy statement can violate Section 14(a) and Rule 14a-9 in one of two ways: where '(a) *the SEC regulations specifically require disclosure of*

*the omitted information in a proxy statement*, or (b) the omission makes other statements in the proxy statement materially false or misleading.'") (cleaned up; emphasis added).

97.    The omission caused Plaintiffs injury because it prevented a vote on their Proposals, and that omission was both material and "an essential link" in the causal chain for the relevant transaction of whether shareholders approve the Proposals. It was material because this was no mere omission of one piece of information about a transaction; rather, it is the unlawful omission of *all* information about two transactions (i.e., votes on proposals) that SEC regulations required to be present. There is undoubtedly at least "a substantial likelihood that a reasonable shareholder would consider [knowledge of the existence of the Proposals] important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). And it was an "essential link" in the causal chain because the absence altogether of the Proposals means that shareholders do not even know about the proposals, let alone get to vote on them. *Tracinda*, 502 F.3d at 228. This is why "reliance is satisfied by a material omission when there is a duty to disclose," as there was here. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 383–84 (2d Cir. 1974).

98.    Airbnb thus violated Rule 14a-9, and Plaintiffs are entitled to injunctive, declaratory, and monetary relief for these violations. *Id.*

## COUNT IV – REASONABLY ANTICIPATED 2026 VIOLATION OF SECTION 14(a) AND RULE 14A-9

99.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

100.    As explained in Count II above, there is a substantial likelihood that Airbnb will again violate Section 14(a) of the Exchange Act and Rule 14a-8 by wrongfully excluding the Proposals, except this time in connection with the 2026 Proxy Materials, unless Plaintiffs' legal rights are adjudicated in this action.

101.    Because "the omission of a proposal from proxy materials that was not properly excluded under Rule 14a-8[] makes the proxy inherently misleading under Rule 14a–9," *Grimes*, 992 F.2d at 458, the reasonable likelihood of a Rule 14a-8 violation in this context necessarily means there is a reasonable likelihood of a Rule 14a-9 violation, too. Just like with Count II, this claim will arise in such a short duration that full litigation is close to impossible before the annual shareholder meeting—unless the Court grants relief in 2025 for the 2026 Proxy Statement. And the claim is capable of repetition for the same reasons as Count II.

102.    The Court should grant declaratory and, if necessary, injunctive relief to ensure Airbnb complies with Rule 14a-9 in 2026.

## COUNT V – BREACH OF FIDUCIARY DUTIES

103.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

104.    Under Delaware state law, a shareholder can maintain an individual action against a company and its corporate officials for breach of fiduciary duties where "the suing stockholder individually" "suffered the alleged harm" and "would receive the benefit of the recovery or other remedy." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). This is called a "direct action." *Id.* at 1037. The Delaware Supreme Court has held that "where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006).

105.    That aptly fits what happened here: an "action against [the corporation] under § 14(a) and Rule 14a-9 [is] a direct action under the *Tooley* test, because [the plaintiff's] complaint is based on the theory that [the corporation's] shareholders were denied the right to a fully informed vote at the [relevant] annual meetings," an injury suffered by the named plaintiff itself "and other

shareholders." *Lee v. Fisher*, 70 F.4th 1129, 1140 (9th Cir. 2023); *see also In re Ebix, Inc.Stockholder Litig.*, No. CIV.A. 8526–VCN, 2014 WL 3696655, at *14 (Del. Ch. July 24, 2014) ("[A]llegations of material misstatements or omissions in a proxy statement which 'impaired the stockholders' right to cast an informed vote' [] would give rise to a direct claim.").

106.    Defendants breached their fiduciary duty, including the duty to act in good faith. Defendants—the Board members who voted on and approved the 2025 Proxy Materials despite the exclusion of the Proposals, and various officers whose obligations include oversight of shareholder proposals—owed fiduciary obligations to Airbnb's shareholders, including Plaintiffs. *See, e.g.*, *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009) ("[O]fficers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty" and "the fiduciary duties of officers are the same as those of directors."). That includes a duty to act in good faith. "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006). This is no ordinary dispute over whether shareholder proposals were excludable. Both Plaintiffs are well-known conservative-leaning shareholders. Defendants ignored Plaintiff ACFV's December 2024 email, submitted by the Alliance Defending Freedom, asking for information on submitting proposals. Then Defendants ignored Plaintiffs' properly submitted Proposals themselves, despite SEC regulations that required Airbnb to inform Plaintiffs of any alleged procedural or eligibility deficiencies prior to excluding Plaintiffs' Proposals and give Plaintiffs an opportunity to correct any such deficiency. *See* 17 C.F.R. § 240.14a-8(f). Thereafter, despite clear evidence that Airbnb's mailroom manager accepted the

Proposals and even physically signed for one of delivered Proposals, Airbnb claims it never received the Proposals and asserts without any factual basis that FedEx forged the delivery receipts. Meanwhile, Defendants swiftly processed and included a proposal from a liberal-leaning shareholder. And then, after all this was discovered, Defendants refused to include the Proposals in the 2025 Proxy Materials and even refused to agree not to exclude them in the future.

107.    These extraordinary facts demonstrate that Defendants violated their duty of disclosure, which is inherent in the duties of loyalty and care. The duty of disclosure requires that whenever directors and officers speak (e.g., issue a proxy statement), they must do so truthfully, and when seeking stockholder action on a matter, they must provide stockholders all material information reasonably available to them. *See New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 145 (Del. Ch. 2023) ("[D]irectors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." (quoting *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998))). The directors and responsible officers violated their duty of disclosure by failing to include the proposals on the proxy/ballot.

108.    Moreover, Defendants "acted with the intent to violate applicable positive law" (i.e., Section 14(a) and 17 C.F.R. § 240.14a-1, *et seq*) that required them to (1) include Plaintiffs' Proposals, (2) follow a process to notify Plaintiffs of any defects, and (3) follow a process to exclude the proposals. These facts demonstrate that Defendants "intentionally fail[ed] to act in the face of a known duty to act." *Id.* This wrongful conduct therefore amounts to a breach of fiduciary duties and interfered with Plaintiffs' right to submit and vote on their Proposals, a classic direct injury.

25

109.    Plaintiffs are entitled to declaratory relief and damages for these violations. *See Dohmen v. Goodman*, 234 A.3d 1161, 1168, 1174 (Del. 2020) (approving "*per se* damages" when breach of duties "caused impairment to the economic or voting rights of stockholders").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment providing the following relief:

A.  An injunction barring Airbnb from excluding the Proposals from the 2025 Proxy Materials;

B.  A declaratory judgment that Airbnb's exclusion of the Proposals from the 2025 Proxy Materials violated Section 14(a) of the 1934 Securities Exchange Act and Rules 14a-8 and 14a-9 promulgated pursuant thereto, 17 C.F.R. §§ 240.14a-8, .14a-9;

C.  A declaratory judgment that Defendants' exclusion of the Proposals from the 2025 Proxy Materials violated Defendants' fiduciary duties;

D.  A declaratory judgment that Airbnb's reasonably anticipated exclusion of the Proposals from the 2026 Proxy Materials would violate Section 14(a) of the 1934 Securities Exchange Act and Rules 14a-8 and 14a-9 promulgated pursuant thereto, 17 C.F.R. §§ 240.14a-8, .14a-9;

E.  Injunctive relief compelling Defendants to include the Proposals in the 2026 Proxy Materials;

F.  An order awarding Plaintiffs their costs of litigation, including reasonable attorneys' fees, pursuant to the common benefit doctrine;

G.  An order awarding Plaintiffs damages for each of the violations above; and

H.  Any other relief as the Court deems just and proper.

Dated: June 2, 2025

/s/ Julianne E. Murray
JULIANNE E. MURRAY
BAR ID 5649
LAW OFFICES OF MURRAY, PHILLIPS & GAY
215 E. Market Street
Georgetown, DE 19947
(302) 855-9300
julie@murrayphillipslaw.com

*Counsel for Plaintiffs*

/s/ R. Trent McCotter
R. TRENT MCCOTTER (*pro hac vice* forthcoming)
BOYDEN GRAY PLLC
800 Connecticut Ave. NW #900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Plaintiff The Heritage Foundation*

/s/ Philip A. Sechler
PHILIP A. SECHLER (*pro hac vice* forthcoming)
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4783
psechler@ADFLegal.org

/s/ Alexandra Gaiser
ALEXANDRA GAISER (*pro hac vice* forthcoming)
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (480) 388-8038
agaiser@ADFLegal.org

*Counsel for Plaintiff American Conservative Values ETC*