IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE HERITAGE FOUNDATION & AMERICAN CONSERVATIVE VALUES ETF,<br><br>Plaintiffs,<br><br>v.<br><br>AIRBNB, INC., *et al.*,<br><br>Defendants. | Civil Action No. 25-676-GBW |

---

Ronald P. Golden, III, Stephen B. Brauerman, BAYARD, P.A., Wilmington, DE; R. Trent McCotter, Nicholas A. Cordova, BOYDEN GRAY PLLC, Washington, D.C.

*Counsel for Plaintiff The Heritage Foundation*

Ronald P. Golden, III, Stephen B. Brauerman, BAYARD, P.A., Wilmington, DE; Philip A. Sechler, ALLIANCE DEFENDING FREEDOM, Lansdowne, VA; Alexandra Gaiser, ALLIANCE DEFENDING FREEDOM, Washington, D.C.

*Counsel for Plaintiff American Conservative Values ETF*

David E. Ross, S. Michael Sirkin, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Blair Connelly, Zachary L. Rowen, Ben Harris, LATHAM & WATKINS LLP, New York, NY; Kristin N. Murphy, Allison O'Hara, LATHAM & WATKINS LLP, Costa Mesa, CA.

*Counsel for Defendants*

**MEMORANDUM OPINION**

February 12, 2026
Wilmington, Delaware

_[signature]_

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendants'[1] Motion to Dismiss for Failure to State a Claim ("Motion") (D.I. 26), which has been fully briefed (D.I. 27; D.I. 34; D.I. 35).

For the reasons set forth below, the Court grants-in-part and denies-in-part Defendants' Motion. Specifically, the Court grants Defendants' Motion as to Counts II, III, IV, and V. With respect to Count I, the Court grants Defendants' Motion as against the Individual Defendants, who are dismissed from this action. However, the Court declines to dismiss Count I as against Airbnb. Plaintiffs may seek leave to amend.

## I.  FACTUAL BACKGROUND

The following facts are drawn from the Complaint (D.I. 1) and are assumed true for the purpose of resolving Defendants' Motion.

### A.  The Parties

Plaintiffs: Plaintiff The Heritage Foundation ("Heritage") "is a public policy institution and expressive association." D.I. 1 ¶ 2. Heritage owns approximately 360 shares of Airbnb common stock. *Id.* Plaintiff American Conservative Values ETF

---

[1] The Defendants in this action are Airbnb, Inc. ("Airbnb"), Ronald A. Klain ("Klain" or "Mr. Klain"), Elinor Mertz ("Mertz" or "Ms. Mertz"), Angela Yang ("Yang" or "Ms. Yang"), Brian Chesky ("Chesky" or "Mr. Chesky"), Angela Ahrendts ("Ahrendts" or "Ms. Ahrendts"), Amrita Ahuja ("Ahuja" or "Ms. Ahuja"), Nathan Blecharczyk ("Blecharczyk" or "Mr. Blecharczyk"), Kenneth Chenault ("Chenault" or "Mr. Chenault"), Joe Gebbia ("Gebbia" or "Mr. Gebbia"), Jeffrey Jordan ("Jordan" or "Mr. Jordan"), Alfred Lin ("Lin" or "Mr. Lin"), and James Manyika ("Manyika" or "Mr. Manyika"). Throughout this Memorandum Opinion, the term "Individual Defendants" refers to Klain, Mertz, Yang, Chesky, Ahrendts, Ahuja, Blecharczyk, Chenault, Gebbia, Jordan, Lin, and Manyika (*i.e.*, all Defendants other than Airbnb).

("ACVF") "is an exchange-traded fund designed to reflect conservative political values in its investment strategy." D.I. 1 ¶ 3. ACVF owns approximately 3,479 shares of Airbnb common stock. *Id.*

Defendants: Airbnb is a publicly listed Delaware corporation, headquartered in San Francisco, California, which functions as "an online marketplace that facilitates peer-to-peer home sharing." D.I. 1 ¶ 20. The Individual Defendants all serve in positions of leadership at Airbnb or on its board. Mr. Klain is Airbnb's Chief Legal Officer, Ms. Mertz is Airbnb's Chief Financial Officer, and Ms. Yang is Airbnb's Director of Investor Relations (together, the "Officer Defendants"). D.I. 1 ¶¶ 24-26. Mr. Chesky, Ms. Ahrendts, Ms. Ahuja, Mr. Blecharczyk, Mr. Chenault, Mr. Gebbia, Mr. Jordan, Mr. Lin, and Mr. Manyika (together, the "Board Defendants") serve on Airbnb's board. D.I. 1 ¶¶ 27-35. Each of the Board Defendants approved Airbnb's 2025 Proxy Materials. *Id.*

### B. Airbnb's Proxy Materials

"In large, publicly held corporations such as Airbnb, most shareholders rarely attend the company's annual meeting in-person." D.I. 1 ¶ 36. "For the company to obtain a quorum of shareholder votes sufficient to take actions necessary for it to conduct its business, the company must utilize proxies, by which a shareholder authorizes another person to vote his or her shares at the annual meeting." *Id.* "To obtain votes by proxy, the company sends out proxy materials, including a proxy solicitation and a voting card that contains the company's proposals for shareholder vote, well in advance of the annual meeting." D.I. 1 ¶ 37.

Airbnb's 2024 Proxy Materials provided that any matters to be included in Airbnb's 2025 Proxy Materials had to be sent to 888 Brannan Street, San Francisco, California, on

or before December 20, 2024. D.I. 1 ¶ 51. A similar rule applies for matters to be included in Airbnb's 2026 Proxy Materials. D.I. 1 ¶ 52.

### C.  The Heritage Proposal

On December 18, 2024, Heritage submitted a proposal (the "Heritage Proposal"), through Bowyer Research, via FedEx to Airbnb's San Francisco headquarters. D.I. 1 ¶ 54. The Heritage Proposal requested that Airbnb's board "report to shareholders annually, at reasonable expense and excluding confidential information, an analysis of how Airbnb oversees the legal and reputational risks connected with politicized divestments." D.I. 1 ¶ 56; *see also* D.I. 1 ¶ 57 (full recitation in support of the Heritage Proposal). On December 19, 2024, FedEx reported "proof-of-delivery" of the Heritage Proposal. D.I. 1 ¶ 59.

### D.  The ACVF Proposal

On December 18, 2024, ACVF submitted a proposal (the "ACVF Proposal," together with the Heritage Proposal, the "Proposals"), through Ridgeline Research, via FedEx to Airbnb's San Francisco headquarters. D.I. 1 ¶ 62. ACVF's Proposal requested that Airbnb's board "conduct an evaluation and issue a report within the next year, at reasonable cost and excluding proprietary information and disclosure of anything that would constitute an admission of pending litigation, evaluating how it oversees risks related to denying or restrict[ing] service to users or customers based on their religious or political status or views under 'hate speech,' 'misinformation,' and related policies, other terms of use or content management policies, or any other policies or practices, and how such discrimination impacts users, customers, and other individuals' exercise of their constitutionally protected civil rights." D.I. 1 ¶ 64 (alteration in original); *see also* D.I. 1

¶ 65 (full recitation in support of the ACVF Proposal). On December 20, 2024, FedEx reported "proof-of-delivery" of the ACVF Proposal. D.I. 1 ¶ 67.

### E. Airbnb's 2025 Proxy Materials and this Litigation

Although Plaintiffs submitted their Proposals to Airbnb, Plaintiffs' Proposals were not included in Airbnb's 2025 Proxy Materials. D.I. 1 ¶ 70. However, a proposal submitted by Connecticut Retirement Plans and Trust Funds, "a liberal-leaning fund that openly supports considerations like Environmental, Social, and Governance ('ESG') factors," was included. D.I. 1 ¶ 71.

On May 8, 2025 and May 13, 2025, in discussions with Plaintiffs' representatives, "Airbnb acknowledged that the proof of receipt for both Proposals showed the name of the mailroom manager for Airbnb ('A. Johnson'), but Airbnb claimed that both of those delivery receipts—which show a signature—must have been forged by FedEx and that Airbnb had never received the Proposals, even though it clearly had no difficulty receiving and processing the proposal from the liberal-leaning Connecticut Retirement Plans and Trust Funds." D.I. 1 ¶ 72.

## II. PROCEDURAL HISTORY

On May 30, 2025, Plaintiffs filed their Complaint, alleging five causes of action: (1) violation of Section 14(a) of the Exchange Act and Rule 14a–8 (D.I. 1 ¶¶ 78-84) ("Count I"); (2) reasonably anticipated violation of Section 14(a) of the Exchange Act and Rule 14a–8 (D.I. 1 ¶¶ 85-92) ("Count II"); (3) violation of Section 14(a) of the Exchange Act and Rule 14a–9 (D.I. 1 ¶¶ 93-98) ("Count III"); (4) reasonably anticipated violation of Section 14(a) of the Exchange Act and Rule 14a–9 (D.I. 1 ¶¶ 99-102) ("Count IV"); and (5) breach of fiduciary duties (D.I. 1 ¶¶ 103-109) ("Count V").

On August 11, 2025, Defendants filed their Motion (D.I. 26), which has been fully briefed (D.I. 27; D.I. 34; D.I. 35). The Court now turns to the merits of Defendants' Motion.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, C.A. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024) (first citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)).

6

The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 23-239, 2024 WL 2804703, at *1 (D. Del. May 31, 2024) (Jordan, J., sitting by designation) (citing *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991)).

### B. Section 14(a) of the Securities Exchange Act of 1934

"Through its proxy materials, a company solicits proxies—hence the term 'proxy solicitation.'" *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015). "Congress, under the Securities Exchange Act of 1934, gave the [Securities and Exchange Commission ('SEC' or 'Commission')] oversight of the proxy context." *Id.* (citation omitted).

"Section 14(a) makes it unlawful to solicit a proxy 'in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.'" *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1284 (2021) (alteration in original) (quoting 15 U.S.C. § 78n(a)(1)). The purpose of Section 14(a) is to "prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations." *Id.* at 709-10 (quoting *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006)).

To state a claim under Section 14(a), a plaintiff must allege that: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the

solicitation materials, was an essential link in the accomplishment of the transaction." *Id.* at 710 (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).

### C.    Rule 14a–9

"Rule 14a–9 implements Section 14(a)." *In re Focus Fin. Partners*, C.A. No. 23-1466, 2025 WL 961488, at *14 (D. Del. Mar. 31, 2025) (citing *In re Keryx Biopharms., Inc.*, 454 F. Supp. 3d 407, 412 (D. Del. 2020)). Rule 14a–9 provides:

> [n]o solicitation subject to this regulation shall . . . contain[] any statement which, at the time and in the light of the circumstances under which it is made,
>
> [1] is false or misleading with respect to any material fact, or
>
> [2] which omits to state any material fact
>
>> [a] necessary in order to make the statements therein not false or misleading or
>>
>> [b] necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a).

### D.    Rule 14a–8

"To complement Rule 14a–9, the Commission promulgated Rule 14a–8 'to catalyze what many hoped would be a functional "corporate democracy."'" *Trinity Wall St.*, 792 F.3d at 335 (quoting Alan R. Palmiter, *The Shareholder Proposal Rule: A Failed Experiment in Merit Regulation*, 45 Ala. L. Rev. 879, 879 (1994)). Rule 14a–8 "addresses when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders." 17 C.F.R. § 240.14a–8; *see also id.* ("Under a few specific circumstances,

the company is permitted to exclude [a] proposal, but only after submitting its reasons to the Commission.").

Rule 14a–8 sets forth a series of procedures that a company must follow if it intends to exclude a shareholder proposal. 17 C.F.R. § 240.14a–8(j); *see also Trinity Wall St.*, 792 F.3d at 336 ("A 'proper' proposal is one that doesn't fit within one of Rule 14a–8's exclusionary grounds—which are both substantive and procedural."). Rule 14a–8 also lists thirteen substantive reasons why a company may exclude the proposal, 17 C.F.R. § 240.14a–8(i), including that "the proposal would, if implemented, cause the company to violate any state, federal, or foreign law to which it is subject," § 240.14a–8(i)(2), or concerns "a matter relating to the company's ordinary business operations," § 240.14a–8(i)(7). "The rule's substantive exclusions [in comparison to its procedural exclusions], by contrast, are 'the most frequently used (and most litigated).'" *Trinity Wall St.*, 792 F.3d at 336 (quoting Palmiter, *supra*, at 890).

## IV. DISCUSSION

The Court divides its discussion into four parts: (A) Count I; (B) Counts II and IV; (C) Count III; and (D) Count V.

### A. Count I

Defendants contend that there is no private right of action under Section 14(a) and Rule 14a–8. D.I. 27 at 6-11. As explained below, the Court disagrees, particularly in light of the Third Circuit's opinion in *Trinity Wall St.*, which addressed – on the merits – a cause of action solely premised under Section 14(a) and Rule 14a–8.

As a starting point, Section 14(a) does not expressly create a private right of action. *Jaroslawicz*, 962 F.3d at 709 ("[Section 14(a)] does not provide for a private right of

action.""). Generally, "where 'the text of a statute does not provide a cause of action, there ordinarily is no cause of action.'" *Id.* (quoting *Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093, 1097 (D.C. Cir. 2017)). More than half a century ago, however, the United States Supreme Court recognized a private right of action under Section 14(a) in *J. I. Case Co. v. Borak* ("*Borak*"). 377 U.S. 426, 430-31 (1964).

In the decades since *Borak*, the Supreme Court has disavowed its former practice of recognizing such rights of action, referring to the time period as an *"ancien regime."* *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (stating that the Supreme Court "abandoned" its previous understanding of recognizing new causes of action and has "not returned to it since" (collecting cases)). Indeed, when addressing *Borak*, the Third Circuit has explained that courts have now "sworn off the habit of venturing beyond Congress's intent," but certain causes of action still find support in *Borak*'s "half-empty 'last drink.'" 962 F.3d at 709 (quoting *Alexander*, 532 U.S. at 287); *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 298 (3d Cir. 2007) (noting that *Borak* was decided during an "older and less restrictive approach to implied private rights of action").

In *Trinity Wall St.*, the Third Circuit addressed exclusions under Section 14(a) and Rule 14a–8, concluding that a shareholder proposal brought by Trinity Wall Street ("Trinity") was properly excludable by Wal–Mart Stores, Inc. ("Wal–Mart"). 792 F.3d at 327-28.[2] The facts of *Trinity Wall St.* are instructive. Trinity drafted a shareholder proposal

---

[2] The parties dispute the import of *Trinity Wall St. Compare* D.I. 27 at 9 (contending that the Third Circuit's decision in *Trinity Wall St.* "said nothing about whether Rule 14a–8 provides a right of action," and that its holding on this issue therefore lacks precedential effect), *with* D.I. 34 at 8 ("Indeed, the seminal case of *Trinity Wall St.* was premised solely on a Rule 14a–8 cause of action.").

and submitted it to Wal-Mart. *Id.* at 329-30. Upon receipt of Trinity's proposal, Wal-Mart notified Trinity and the SEC that it believed it could exclude Trinity's proposal, and Wal-Mart secured a "no-action letter"[3] from the SEC. *Id.* at 330-31. Undeterred by the SEC's no-action letter, Trinity filed a declaratory judgment action, seeking a declaration that "Wal–Mart's decision to omit the proposal from [its] 2014 Proxy Materials violate[d] Section 14(a) of the 1934 Act and Rule 14a–8." *Id.* at 332 (first alteration in original) (quoting *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 622 (D. Del. 2014)).[4]

On appeal, addressing the standard of review, the Third Circuit stated: "[a]s it did below, Wal–Mart bears the burden of establishing as a matter of law that it properly excluded the proposal under an exception to Rule 14a–8." *Id.* at 334 (citing *AFSCME v. Am. Int'l Grp., Inc.*, 462 F.3d 121, 125 (2d Cir. 2006)); *see also AFSCME*, 462 F.3d at 123 (holding that a shareholder proposal seeking to amend corporation's bylaws could not be excluded from corporate proxy materials under Rule 14a–8(i)(8)). Thus, under *Trinity Wall St.*, Plaintiffs may seek declaratory relief under Section 14(a) and Rule 14a–8 if shareholder proposals are improperly excluded under Rule 14a–8. *See id.*; *see also Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 429 (D.C. Cir. 1992) (R.B.

---

[3] "In the words of the SEC, a 'no-action letter is one in which an authorized staff official indicates that the staff will not recommend any enforcement action to the Commission if the proposed transaction described in the incoming correspondence is consummated.'" *Trinity Wall St.*, 792 F.3d at 330 n.4 (citation omitted).

[4] Trinity later amended its complaint to assert two causes of action: first, violation of Section 14(a) and Rule 14a–8 for Walmart's exclusion of Trinity's proxy in the 2014 materials; and second, reasonably anticipated violation of Section 14(a) and Rule 14a–8, under the expectation that Wal-Mart would exclude Trinity's next proposal from its 2015 proxy materials. Amended Complaint ¶¶ 50-60, *Trinity Wall Street v. Wal-Mart Stores Inc.*, D.I. 32 in Civil Action No. 14-405 (D. Del May 19, 2024).

Ginsburg, J.) ("A private right of action is properly implied from section 14(a) of the Act, and Commission Rule 14a–8 thereunder, to enforce a registrant's obligation to include a shareholder's proposal in proxy materials mailed out in advance of the annual meeting."). In *Roosevelt*, the D.C. Circuit affirmatively recognized a private right of action under Section 14(a) and Rule 14a–8, reasoning that:

> first, section 14(a) supports [plaintiff's] right of action no less than it supports the right recognized in *Borak*; second, "it would be demonstrably inequitable to [shareholders] with claims comparable to those previously recognized" to deny the right to sue asserted here, *see* [*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1104 (1991)]; and third, such a denial would upset longstanding administrative arrangements and shareholder expectations.

*Roosevelt*, 958 F.2d at 421.[5]

In sum, *Trinity Wall St.* permits a cause of action under Section 14(a) and Rule 14a–8, and Airbnb offers no other basis for dismissal. Thus, the Court declines to dismiss Count I of the Complaint as against Airbnb. However, for the reasons set forth in Section IV.D, *infra*, and because Plaintiffs have not shown that the implicit cause of action under Section

---

[5] The Court further observes that many courts (and treatises) have recognized the existence of this cause of action. *See, e.g., Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 879 n.1 (S.D.N.Y. 1993) ("The existence of a private right of action by a shareholder under § 14(a) of the [Securities Exchange Act] and Rule 14a–8 is well settled and uncontested here." (citations omitted)); *Bebchuk v. CA, Inc.*, 902 A.2d 737, 742 n.28 (Del. Ch. 2006) ("[A]n aggrieved stockholder may seek inclusion of a proposal wrongfully left out of a company's proxy materials by appealing the staff's decision to the Commission, or by exercising its implied private right of action under Rule 14a–8 to challenge the exclusion in federal court." (citing *Roosevelt*, 958 F.2d 416)); *KBR v. Chevedden*, 478 F. App'x 213, 215 & n.1 (5th Cir. 2012) (rejecting corporation's argument that no cause of action over the exclusion of shareholder proposals under Section 14(a) and Rule 14a–8 existed); Thomas L. Hazen, Treatise on the Law of Securities Regulation § 10:28 (Nov. 2025 update) ("[C]ourts have agreed in recognizing the implied right of action to enforce rights under Rule 14a–8.").

14(a) and Rule 14a–8 extends to individuals, the Court grants Defendants' Motion with respect to Count I as to the Individual Defendants.

### B. Counts II and IV

Count II alleges a "reasonably anticipated 2026 violation of Section 14(a) and Rule 14a–8." D.I. 1 ¶¶ 85-92. Plaintiffs further allege that they "will not know for certain whether their Proposals have been wrongfully excluded until Airbnb actually releases its 2026 Proxy Materials in Spring 2026, just weeks before the 2026 Annual Me[e]ting itself, meaning the time for Plaintiffs to sue and obtain a judicial ruling is during a vanishingly narrow window." D.I. 1 ¶ 87. For similar reasons, Count IV alleges a "reasonably anticipated 2026 violation of Section 14(a) and Rule 14a–9." D.I. 1 ¶¶ 99-102.

Defendants contend that Counts II and IV should be dismissed on ripeness grounds. D.I. 27 at 14-15. The Court agrees. "To determine if a claim is ripe, [courts] consider "whether the parties are in a 'sufficiently adversarial posture,' whether the facts of the case are 'sufficiently developed,' and whether a party is 'genuinely aggrieved.'" *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 135 (3d Cir. 2022) (quoting *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017)). "In the declaratory judgment context, [courts] apply these principles by considering three enumerated factors: '(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.'" *Id.* (quoting *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)). For example, in *Trinity Wall St.*, the court stated that "Trinity's request to enjoin Wal–Mart from excluding the proposal from its 2015 proxy materials is ripe, as Trinity resubmitted its proposal for inclusion in Wal–Mart's 2015 proxy materials and Wal–Mart again rebuffed its request." 792 F.3d at 334.

As Defendants observe, "Plaintiffs do not allege that they have taken any steps even to submit the Proposals (or any other proposals) for inclusion in the 2026 Proxy Materials." D.I. 27 at 14; *see also Doris Behr 2012 Irrevocable Tr. v. Johnson & Johnson*, No. 22-1657, 2023 WL 3316329, at *2 (3d Cir. May 9, 2023) ("Plaintiffs' conjecture that a future shareholder vote on their proposal would be unfair fails to establish a ripe dispute since such a vote 'may not occur as anticipated, or indeed may not occur at all.'" (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)). Thus, the Court grants Defendants' Motion with respect to Counts II and IV.

### C.  Count III

Count III alleges that the exclusion of the Proposals renders the 2025 Proxy Materials "false or misleading," thereby constituting a violation of Section 14(a) and Rule 14a–9. D.I. 1 ¶¶ 93-98. To state a claim under Section 14(a) and Rule 14a–9, Plaintiffs must allege that: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff[s] injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Jaroslawicz*, 962 F.3d at 710 (quoting *Tracinda*, 502 F.3d at 228). Defendants do not appear to dispute that there was a "proxy statement" or contest the second or third elements. *See* D.I. 34 at 11.

Instead, Defendants contend that Plaintiffs fail to satisfy the pleading standards under the Private Securities Litigation Reform Act ("PSLRA") by failing to allege a particular misleading statement.[6] The Court agrees. In allegations of securities fraud, the

---

[6] Based on its location in Defendants' brief, the Court understands Defendants to have made this argument only with respect to Count III. *See* D.I. 27 at 11-12.

14

PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1328 (3d Cir. 2002) ("[A] party asserting a claim under the federal securities laws must meet the heightened pleading standard set forth under the PSLRA, enacted in 1997 to restrict abuses in securities class-action litigation."). In *NAHC*, the Third Circuit held that the PSLRA's pleading standards applied to a cause of action under Section 14(a) and Rule 14a–9. 306 F.3d at 1329. In the present action, Plaintiffs' Complaint fails to state a cause of action because it does not specify any statement alleged to be misleading. *Cf.* D.I. 1 ¶¶ 70-71 (describing Airbnb's 2025 Proxy Materials), 93-98 (alleging violation of Section 14(a) and Rule 14a–9).

The text of Rule 14a–9 confirms this result. Rule 14a–9 proscribes the omission, in the context of written proxies, of "any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." 17 C.F.R. § 240.14a–9(a). In view of the rule itself, Plaintiffs have not sufficiently alleged the statements within the relevant proxy itself or any statement in a pertinent earlier communication. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020) ("The text of SEC Rule 14a-9 makes it clear that vague allegations about the gestalt of a proxy statement will not suffice. Even for omission-based claims, the plaintiff must identify specific 'statements therein' that are rendered 'false or misleading' by the alleged omissions. This requirement accords with the PSLRA,

15

which requires the complaint to 'specify each statement alleged to have been misleading' and 'the reason or reasons why the statement is misleading.'").

Plaintiffs' reliance on *Jaroslawicz* is unavailing.[7] In *Jaroslawicz*, the Third Circuit recognized that "omissions in a proxy statement can violate Section 14(a) and Rule 14a–9" if, *inter alia*, "SEC regulations specifically require disclosure of the omitted information in a proxy statement." 962 F.3d at 710 (quoting *Seinfeld*, 461 F.3d at 369). The plaintiffs in *Jaroslawicz* alleged that the omission of "risk factors" required "by Item 105, such as the condition of [defendant's] regulatory compliance program, and its failure to disclose such risks *made other statements misleading*." *Id.* (emphasis added). Indeed, as the district court in *Jaroslawicz* explained, the operative complaint contained italicized portions of a series of statements in the relevant proxy statement that were allegedly misleading. *Jaroslawicz v. M&T Bank Corp.*, 296 F. Supp. 3d 670, 674 (D. Del. 2017). In contrast, Plaintiffs have not identified any specific statements. For all the foregoing reasons, the Court grants Defendants' Motion with respect to Count III.

---

[7] Plaintiffs' reliance on *Grimes v. Ohio Edison Co.*, 992 F.2d 455 (2d Cir. 1993) is similarly inapposite. In *Grimes*, the Second Circuit addressed a different issue than the one presented in this action, namely "whether the omission of a proposal that was properly excluded under Rule 14a–8(c) can nonetheless render the proxy materials misleading under Rule 14a–9." *Id.* at 458. The Second Circuit concluded that such an omission would not render the proxy materials misleading. *See id.* In so doing, the Second Circuit distinguished *New York City Employees' Retirement Sys. v. American Brands, Inc.*, 634 F. Supp. 1382 (S.D.N.Y. 1986) ("*American Brands*"), where the district court had determined that omission of an improperly excluded shareholder proposal rendered the proxy "inherently misleading under Rule 14a–9." 992 F.2d at 458. While the Second Circuit did state in *Grimes* that "*American Brands* stands for the proposition that the omission of a proposal from proxy materials that was not properly excluded under Rule 14a–8(c) makes the proxy inherently misleading under Rule 14a–9," it importantly clarified that *American Brands* was "inapposite" to its holding. *Id.* Plaintiffs cite no post-PSLRA cases – binding or otherwise – applying *American Brands*'s rationale.

### D. Count V

Count V alleges a breach of fiduciary duties, namely the duties of disclosure, good faith, and loyalty, by the Individual Defendants. *See* D.I. 1 ¶¶ 103-09. Defendants claim that Count V should be dismissed because (1) Plaintiffs have engaged in "improper" group pleading, (2) Airbnb's charter forecloses a duty of care claim, (3) Plaintiffs fail to allege facts supporting a duty of loyalty claim, and (4) Plaintiffs fail to allege facts supporting a duty of disclosure claim.

"Delaware corporate law rests on the bedrock principle that directors of a Delaware corporation owe fiduciary duties to the corporation for the benefit of all of its stockholders." J. Travis Laster & John Mark Zeberkiewicz, *The Rights and Duties of Blockholder Directors*, 70 Bus. Law. 33, 33 (2015).[8] As the Delaware Supreme Court has emphasized, "each director has a right to be considered individually when the directors face claims for damages in a suit challenging board action." *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1182 (Del. 2015) (Strine, C.J.) (collecting cases). The Court will now address each of Plaintiffs' theories for their breach of fiduciary duties claim.

Duty of Loyalty: "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Metro*

---

[8] These fiduciary duties apply to directors and officers alike. *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) ("In the past, we have implied that officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and that the fiduciary duties of officers are the same as those of directors. We now explicitly so hold." (footnote omitted)).

*Storage Int'l LLC v. Harron*, 275 A.3d 810, 842 (Del. Ch. 2022) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). Furthermore, "[t]he duty of loyalty includes a requirement to act in good faith, which is 'a subsidiary element, i.e., a condition, of the fundamental duty of loyalty.'" *Id.* (alteration in original) (quoting *Stone*, 911 A.2d at 370). "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *Id.* (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (further citation omitted)).

As a matter of law, the Complaint's allegations do not state a claim for breach of duty of loyalty by any of the Individual Defendants. As described above, the Complaint contains one paragraph describing each Individual Defendants' alleged connection to the omission of Plaintiffs' Proposals. *See* D.I. 1 ¶¶ 24-35. None of those paragraphs indicate that any Individual Defendant was aware of Plaintiffs' Proposals, read the Proposals, considered the Proposals, or intentionally chose to exclude them. *See, e.g.*, D.I. 1 ¶ 35. Nor do they sufficiently plead that the Individual Defendants acted with a purpose other than advancing Airbnb's best interests. This is fatal to Plaintiffs' duty of loyalty and good faith theories. *See Metro Storage*, 275 A.3d at 842. While Plaintiffs contend that "it is reasonable to infer that the decision to continue to exclude the Proposals was made at the highest levels of Airbnb," and that the "Individual Defendants were asleep at the switch," D.I. 34 at 17-18, these assertions are not supported by well-pleaded allegations in the Complaint.[9]

---

[9] To the extent that Plaintiffs rely on a new theory, predicated on Defendants' attachment of a press release to their opening brief, *see* D.I. 34 at 17 (citing D.I. 28-1 at

Duty of Care: Airbnb's Charter provides for exculpation of directors and officers to the "fullest extent permitted by law." D.I. 28-1 at 36. Section 102(b)(7) of the Delaware General Corporation Law governs the extent of exculpation of directors and officers. Relevant here, "Section 102(b)(7) and its exceptions foreclose exculpation for breaches of the duty of loyalty, including its subsidiary element of good faith, while permitting exculpation for breaches of the duty of care." *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1161 (Del. Ch. 2024) (citation omitted). "Therefore, to plead a non-exculpated claim, a complaint must allege 'facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.'" *Id.* (quoting *In re Cornerstone*, 115 A.3d at 1179-80). As stated above, the Court holds that the Complaint does not contain well-pleaded allegations supporting claims for bad faith or breach of the duty of loyalty. Thus, the Court holds that the Complaint fails to state a claim on this theory as a matter of law.

Duty of Disclosure: The core fiduciary duties owed by directors are the duties of care and loyalty. *New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 144 (Del. Ch. 2023) (citing *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). The duty of disclosure, as described by the Delaware Court of Chancery, "is not an independent duty, but rather arises as "the application in a specific context of the board's fiduciary duties . . . ."" *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del.

---

18-19), the Court does not consider it. *See, e.g.*, *Rogers v. Mears*, C.A. No. 22-596-GBW, 2025 WL 3199161, at *9 & n.4 (D. Del. Nov. 17, 2025) (collecting cases).

2001)). Delaware courts have outlined four common "scenarios" implicating the duty of disclosure. *See id.* Plaintiffs rely upon the second of these scenarios (D.I. 34 at 20), under which directors "who knowingly disseminate false information that results in . . . damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." *Rich*, 292 A.3d at 145 (quoting *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998)). Given that the Court has already determined that Plaintiffs fail to state a cause of action with respect to Count III, and because Plaintiffs have not adequately alleged any Individual Defendants' knowing dissemination of false information, Plaintiffs have failed to state a claim for breach of fiduciary duties based on the duty of disclosure. Thus, the Court grants Defendants' Motion with respect to Count V.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion with respect to Counts II, III, IV, and V in their entirety. Defendants' Motion with respect to Count I is granted only in favor of the Individual Defendants, who are dismissed from this action, but denied as to Airbnb. An Order consistent with this Memorandum Opinion will be entered.